**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| DAVID E. VIGOR, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     CIVIL ACTION 07-0733-WS-M |
| | ) |
| CITY OF SARALAND, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on defendants' Motion for Summary Judgment (doc. 48), plaintiff's Motion to Strike Affidavit of Dr. Howard J. Rubenstein (doc. 56), and defendants' Motion to Strike Declaration of David Vigor (doc. 62).  All Motions have been briefed and are ripe for disposition at this time.[1]

I.      **Nature of Plaintiff's Claims.**

Plaintiff David E. Vigor, by and through counsel of record, brought this action under 42 U.S.C. §§ 1983 and 1985 against the City of Saraland, Alabama; Ravon Allen, who is the Chief of the Saraland Fire Department; and four members of the Saraland City Council, including Howard Rubenstein, Marvin Adams, Newton Cromer, and Charles Hanke.  All individual

---

[1]     In his evidentiary submission concerning the Motion for Summary Judgment, plaintiff has submitted the complete deposition transcripts of multiple witnesses.  (*See* doc. 58.)  This filing contravenes the Local Rules' directive that "[i]f discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response."  LR 5.5(c).  Although plaintiff's evidentiary submission will be accepted as filed, this Court will not scour uncited portions of that submission for any scrap of evidence that may advance plaintiff's position.  *See Preis v. Lexington Ins. Co.*, 508 F. Supp.2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions."); *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it").

defendants are sued in both their official and individual capacities.

The Amended Complaint (doc. 18) centers on defendants' denial of a merit pay increase to Vigor in December 2006.  Although plaintiff's pleading is not a model of clarity, it recites a litany of purported constitutional violations embedded in that denial, including the following: (a) an allegation that Vigor had invoked "his guarantee of free speech" and that defendants' denial of his merit raise was "designed and intended to suppress unpopular speech" (doc. 18, ¶¶ 16, 17); (b) a contention that defendants' actions impaired Vigor's "right to be free from intimidation and harassment" (*id.*, ¶ 20); and (c) an assertion that the individual defendants "conspired to deny the Plaintiff his constitutionally protected rights, including his liberty rights, due process rights, and property rights" (*id.*, ¶ 28).  To intensify the murkiness of exactly what theory or theories underlie his § 1983 claim, Vigor offers vague buzzword allegations that the denial of his merit raise was "arbitrary and capricious" (*id.*, ¶ 11); that the City of Saraland has a "policy, practice or custom ... to intimidate people such as the Plaintiff from pursuing personal interests opposed by officials" (*id.*, ¶ 26); that defendants' conduct was "in bad faith ... and to retaliate for and to deter him from expressing viewpoints or undertaking actions they deemed unfavorable" (*id.*, ¶ 29); and that defendants' actions "were made with actual malice and/or constituted willful misconduct" (*id.*, ¶ 30).  Plaintiff also alleges that the City failed to provide adequate training to the individual defendants to protect Vigor's constitutional rights.  (*Id.*, ¶ 27.)

Construed in the aggregate, Vigor's claims appear primarily rooted in his contention that defendants violated his First Amendment right to freedom of speech by penalizing him for engaging in speech of which they disapproved.  Read liberally, the Amended Complaint also may assert claims for constitutional infringements in the form of violations of Vigor's rights to equal protection, substantive due process, and procedural due process.[2]  In addition to the

---

[2]     In briefing their summary judgment motion, defendants assume that Vigor is claiming First Amendment, equal protection, substantive due process and procedural due process violations, and conduct a separate analysis of each such constitutional right despite the fact that several of them are at best implied by the Amended Complaint's verbiage.  Plaintiff's opposition brief ignores most of these theoretical deprivations and fails to identify the precise constitutional right(s) that he claims is or are at issue.  This posture is highly inefficient, as it essentially leaves defense counsel guessing as to what the alleged constitutional deprivation is, and obliges the Court to address constitutional challenges that may not even be joined in this case.  In similar

substantive § 1983 claim, Vigor also pursues a § 1985 claim alleging that defendants conspired to violate his constitutional rights.  After the close of discovery, defendants moved for summary judgment on all of Vigor's § 1983 and § 1985 claims on the grounds that, *inter alia*, the record viewed in the light most favorable to plaintiff shows that he did not suffer a constitutional deprivation of any stripe.  Plaintiff opposes this motion.

**II.    Background Facts.**[3]

Vigor was employed by the City of Saraland, Alabama, as a firefighter continuously from 1998 through early 2008, at which time he voluntarily resigned his position to accept employment as a contract security worker at the Ciba plant in McIntosh, Alabama.  (Vigor Dep., at 22-23.)[4]  During all times relevant to this proceeding, defendant Ravon Allen was the chief of

---

actions, the undersigned has not hesitated to order plaintiffs to replead complaints in the presence of such infirmities.  *See, e.g., Cobb v. Hawsey*, 2007 WL 2093474, *5 (S.D. Ala. July 20, 2007) (ordering plaintiff to replead § 1983 claim where it was impossible to determine constitutional basis for claim); *Anderson v. Greene*, 2005 WL 1971116, *7 (S.D. Ala. Aug. 16, 2005) (where it was not possible to glean from pleading how plaintiff alleged defendant violated his constitutional rights, or what the alleged deprivation was, requiring plaintiff to amend his complaint).  After all, the law is clear that when pleading a § 1983 claim, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).  Plaintiff's Amended Complaint did not hew to this principle, nor did defendants seek clarification via Rule 12 motion as to the precise constitutional rights at issue.  The result is that both the Rule 56 filings and this Order must wade through multiple constitutional rights that may or may not be in play, which is surely a wasteful and eminently avoidable outcome.  A far more efficient path could have been traced had either (a) Vigor pleaded his constitutional claims with sufficient specificity to enable a reasonable determination of the precise rights at issue, or (b) defendants filed a Rule 12(e) motion or otherwise pinned down those specific violations in discovery without having to resort to guesswork in summary judgment briefing as to the precise nature of those alleged violations.

[3]      The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor.

[4]      Vigor's resignation letter fixed his final day of work for the City of Saraland as being January 25, 2008.  (Doc. 51, at Exh. 8.)  In his deposition, Vigor testified that he resigned because he "didn't really feel like ... [his] future at the City of Saraland was going anywhere."  (*Id.* at 23.)  However, this lawsuit is devoid of any allegations that Vigor's separation from the City of Saraland was involuntary, that he was forced to resign, that he was constructively

the Saraland Fire Department, and nonparty Dewey Stringfellow was the assistant chief.  (*Id.* at 32; Allen Dep., at 9.)

> **A.      Relevant Policies and Practices Concerning Merit Raises.**

It is undisputed that Vigor, like all other City of Saraland employees, was subject to, and covered by, the Rules and Regulations of the Mobile County Personnel Board.  Those Rules and Regulations include a specific provision governing merit pay increases, as follows: "Salary advancement within a range shall not be automatic but shall be made upon specific recommendation of the Appointing Authority, with a similar recommendation of the Director, and the approval of the governing body."  (Doc. 51, at Exh. 4, § 5.4.)  As a general proposition, merit increases may not be made more frequently than 12-month intervals.  (*Id.*)  The record reflects that the Saraland employees are subject to these principles, including the non-guaranteed nature of merit raises, the award of merit increases only upon specific recommendations, and the availability of merit increases on no more than an annual basis.[5]  Indeed, City officials unequivocally explained that department heads are responsible for evaluating their employees and making recommendations concerning merit raises, and that the City Council consistently ratifies those recommendations with no independent investigation.  (Rubenstein Dep., at 11-13, 25; Adams Dep., at 9, 17; Hanke Dep., at 12, 26.)[6]  There are no "exact criteria" that lead to a

---

discharged, or the like.  Rather, Vigor's claims herein are focused exclusively on his failure to receive a merit pay increase in December 2006, not on the circumstances surrounding and reasons for his resignation from his employment at the City of Saraland some 13 months after that merit increase was withheld.  Accordingly, plaintiff's resignation is simply not at issue in this case, and is irrelevant to the summary judgment motion.

[5]      In the City of Saraland, merit raise determinations are made each year, effective on the employee's anniversary date of commencing service for the City.  (Allen Dep., at 38; Hanke Dep., at 14; Adams Dep., at 9.)

[6]      The lack of any independent review, evaluation or assessment by the City Council concerning the propriety of a merit raise in a particular case is underscored by the City Council President's testimony that "[w]e have never denied a merit raise that was recommended by a department head except for a department head."  (Rubenstein Dep., at 26.)  Likewise, Chief Allen does not recall the City Council ever denying a merit raise that he had recommended. (Allen Dep., at 18.)  City Council member Charles Hanke's testimony was consistent with that of Dr. Rubenstein and Chief Allen on this point.  (Hanke Dep., at 16-17.)

merit increase, and no City employee is ever guaranteed a merit raise based on specific,
objectively definable factors, such as service ratings.  (Rubenstein Dep., at 13-14; Adams Dep.,
at 9.)[7]  Rather, City officials "look at the total picture and ultimately it is up to the department
head to either recommend or not recommend somebody for a merit raise."  (Rubenstein Dep., at
13; Adams Dep., at 9; Hanke Dep., at 12.)  Moreover, the criteria and qualities that may support
a merit raise are left to the individual departments to decide, and are not formalized, recorded or
prescribed in any rigorous manner by the State, the City Council, the Personnel Board, or anyone
else.  (Rubenstein Dep., at 12.)

     Within the Saraland Fire Department, the procedure for merit raises during the relevant
time frame was that they had to be recommended by the employee's immediate supervisor, the
assistant chief, and Chief Allen, then referred to the City Council for approval.  (Allen Dep., at
16; Vigor Dep., at 41.)[8]  Although merit raises are typically granted, Chief Allen recalls multiple
occasions when he has exercised his discretion to deny a merit raise to employees.  (Allen Dep.,
at 16.)  The critical, undisputed point is that the award of merit raises to City employees was

---

     [7]     The record reflects that service ratings are neither paramount nor controlling in
the totality-of-the-circumstances calculus of whether a merit raise is warranted.  As Dr. Howard
Rubenstein, the President of the Saraland City Council, testified: "Let's say employee X has a
high service rating and then the next day went out and shot somebody because he was mad at
them.  I think that department head would be well within their grounds to not recommend them
for a merit rate [sic] base [sic] on the totality of their performance."  (Rubenstein Dep., at 15.)

     [8]     Plaintiff attempts to discredit his own testimony on this point, as well as that of
every single defense witness, by arguing in his brief that record documents establish that
department head recommendations for merit raises were unnecessary.  (Doc. 58, at 5.)  This
argument fails for two reasons.  First, from a conceptual standpoint, a plaintiff cannot avoid
summary judgment by stitching together a narrative account that rejects his own testimony in
favor of some other contradictory bit of evidence.  *See, e.g, Evans v. Stephens*, 407 F.3d 1272,
1278 (11th Cir. 2005) ("When the nonmovant has testified to events, we do not (as urged by
Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts
(in effect, declining to credit some of the nonmovant's own testimony) and then string together
those portions of the record to form the story that we deem most helpful to the nonmovant.").
Second, the mere fact that the "Employee's Progress" forms on which plaintiff's counsel relies
are signed by the immediate supervisor and do not have a blank for the department head to sign
in no way undermines or contradicts the unanimous testimony from every witness in this case
that merit raises in the City of Saraland require a department head's recommendation.

wholly discretionary.  (*Id.* at 15.)  That said, the record evidence taken in the light most favorable to plaintiff reflects that, in practice, Fire Department employees whose service ratings were high quality or exceptional were awarded merit raises.  Indeed, Assistant Chief Stringfellow testified that to the best of his knowledge and recollection Fire Department employees with high quality or exceptional service ratings had always received merit raises, although he qualified this statement by indicating that such merit raises would be awarded "[u]nless there was some other extenuating circumstance."  (Stringfellow Dep., at 18-19.) Clearly, then, the discretion to deny merit raises existed even where an employee received a favorable service rating, depending on the totality of the circumstances.

> **B.      *Vigor's Performance History and the December 2006 Meeting.***

Vigor's performance appraisals were uniformly favorable during the relevant time frame. In June 2005 and again in June 2006 he was rated as having "exceptional job performance," while in June 2007 his rating was "high quality job performance."  (Rubenstein Dep., at 22; Allen Dep., at 12-14; Stringfellow Dep., at 15, 21, 23.)  Vigor was also honored as Fireman of the Year for the City of Saraland in 2005.  (Rubenstein Dep., at 24-25; Stringfellow Dep., at 16, 22.)  Assistant Chief Stringfellow's observations of Vigor were that "he was doing a fine job" until his resignation in early 2008.  (Stringfellow Dep., at 24.)

Vigor's anniversary service date with the City of Saraland was in January; therefore, he was due for merit raise consideration in January 2007.  On or about December 8, 2006, his immediate supervisor, Captain David Adams, prepared an Employee's Progress form recommending that Vigor receive a merit raise the following month.  (Doc. 51, at Exh. 5.)[9] Approximately three days later, on or about December 11, 2006, however, Chief Allen called Vigor into a closed-door meeting with himself and Assistant Chief Stringfellow.  (Vigor Dep., at 39-40; Stringfellow Dep., at 24-25, 37; Allen Dep., at 18.)[10]  During that meeting, Chief Allen

---

[9]      The record confirms that this form (and not the employee's annual service rating form) is the document used to initiate the merit raise process for a City employee.  (Adams Dep., at 9, 12.)

[10]      Vigor surreptitiously tape-recorded that meeting, and several deponents refer to the transcript of that recording.  (*See, e.g.,* Vigor Dep., at 44; Stringfellow Dep., at 33.)  Be that as it may, neither the recording itself nor an agreed transcript of same has been made part of the

inquired of Vigor whether the latter had submitted an application for employment to the City of Orange Beach. (Vigor Dep., at 39.)[11] Vigor had in fact submitted an application for employment with the Orange Beach Fire Department at some time prior to this meeting. (*Id.* at 50.) Rather than acknowledging his actions, Vigor's response was to avoid the question and instead to state that "what I do on my off time is my business." (*Id.* at 40.) In Chief Allen's eyes, Vigor's demeanor became "[v]ery arrogant like I didn't have any business even asking the question." (Allen Dep., at 19.) As a result, tempers flared "and some other things were said." (Vigor Dep., at 40.)[12] Chief Allen asked more than twice whether Vigor had applied for employment at another municipality. (Stringfellow Dep., at 25.) But Vigor never answered the question directly, instead repeating that it was none of Chief Allen's business. (*Id.* at 25-26.)

    As the meeting escalated, Chief Allen indicated that he would not recommend Vigor for a merit raise. (Vigor Dep., at 40; Allen Dep., at 22-23.) The record shows that Chief Allen and Assistant Chief Stringfellow disagreed over whether Vigor should or should not receive a merit

_____

record; therefore, the Court's analysis is confined to the participants' recollections of that meeting rather than any kind of verbatim record of what transpired.

    [11]    In his deposition, Chief Allen concurred that, generally speaking, employees have the right to keep what they do in their off time their own business and that Vigor could do as he wished during his off time. (Allen Dep., at 19.) However, those broad sentiments were tempered by Chief Allen's testimony that he believes an employee does have a duty to inform him of non-working time conduct that affects the department. (*Id.* at 45.) As Chief Allen succinctly put it, "If it affects my fire department I believe it is my business." (*Id.* at 20.)

    [12]    The confrontation between Vigor and Chief Allen was striking in its divergence from Chief Allen's analogous one-on-one meetings with other firefighters whom he also suspected of applying for jobs at Orange Beach. Indeed, the record reflects that Chief Allen met with firefighters Randy Osborne, Andy Anderson and Chad Conner to ask whether they had sought other employment. (Allen Dep., at 28.) Rather than reacting angrily or telling Chief Allen that it was none of his business, each of Osborne, Anderson and Conner readily admitted to having submitted applications to Orange Beach, but reassured Chief Allen that they would not accept employment there if a position were offered. (*Id.* at 28-29.) There is no indication in the record that any of Osborne, Anderson or Conner were reprimanded, disciplined, or retaliated against in any way for having submitted applications to the City of Orange Beach. According to Chief Allen, once these individuals admitted having applied but explained that they had no intention of going to work for Orange Beach, nothing further was said and the conversation was over. (*Id.*) None of Osborne, Anderson or Conner were denied merit raises. (*Id.* at 38.)

raise after the manner in which he had conducted himself at the meeting.  (Allen Dep., at 25-26.)
While Chief Allen expressed opposition to a merit raise for Vigor, Assistant Chief Stringfellow
"did recommend that his raise be granted."  (*Id.*)  Chief Allen stated that, given the disagreement
between himself and the Assistant Chief, he would discuss the matter with the Mayor and the
City Council and allow them to decide whether to award Vigor a merit raise.  (*Id.* at 26-27.)[13]
Despite this difference of opinion, Assistant Chief Stringfellow acknowledges that, ultimately,
whether to recommend to the City Council that a merit raise be awarded to a Fire Department
employee "is Chief Allen's decision."  (Stringfellow Dep., at 32, 35.)

> **C.      City Council Involvement in Vigor's Merit Raise.**

Agenda items for City Council meetings are submitted by Chief Allen and Assistant
Chief Stringfellow for consideration by the Mayor and the Council a week ahead of time.
(Stringfellow Dep., at 28.)  As a result, the issue of Vigor's merit raise was placed on the City
Council's agenda for its December 14, 2006 meeting on the strength of the Employee's Progress
form dated December 8, 2006, notwithstanding the verbal altercation of December 11 that had
prompted a change of heart by Chief Allen as to the propriety of a merit raise for Vigor.  (*Id.* at
28-29; Rubenstein Dep., at 17.)  Upon learning that Vigor's merit raise was still on the Council's
agenda for its December 14 meeting, Chief Allen requested that the matter be tabled until he
could speak with the Council about it.  (Allen Dep., at 32.)[14]  According to Chief Allen, the

---

[13]      According to Chief Allen, his reason for not recommending a merit raise to Vigor
was "[b]ecause I thought he was fixing to leave our employment."  (Allen Dep., at 23.)  But
Assistant Chief Stringfellow's opinion was that "the merit raise was a legitimate request from his
supervisor to me and I approved it.  I thought it was warranted ...."  (Stringfellow Dep., at 45.)
Assistant Chief Stringfellow's recollection is that Chief Allen indicated that "he wasn't going to
give a merit raise to anybody who was looking for employment somewhere else."  (*Id.* at 27-28.)
In point of fact, however, Chief Allen did not withhold merit increases for at least three other
Saraland Fire Department employees who had submitted applications with the Orange Beach
Fire Department.  Indeed, the uncontroverted evidence is that, excluding Vigor, no other Fire
Department employee who had applied for employment elsewhere was denied a merit raise or
suffered any adverse consequence.  (Stringfellow Dep., at 28, 39-40.)

[14]      In particular, in an e-mail to Dr. Rubenstein dated December 14, 2006, Chief
Allen wrote: "I request the Merit Raise for Fire Fighter David Vigor be tabled tonight.  It is not
due until Jan.5 2007.  I will talk to you about it when you have time.  I have talked to
Councilman Hanke about this and i think he will agree."  (Doc. 58-6, at 18.)  Dr. Rubenstein

reason for this request was that he wanted to explain to the Council what had happened during the December 11 meeting.  (*Id.* at 33.)  The City Council President, Dr. Howard Rubenstein, assented to Chief Allen's request because "[w]e have always followed the recommendation of the department head when it comes to a merit raise. ... If the department head says ... I don't recommend a raise at this point, I would like it tabled, so it was tabled."  (Rubenstein Dep., at 17-18.)  Other Council members echoed Dr. Rubenstein's sentiment that the Council defers to department heads on such requests.  For example, Councilman Marvin Adams explained that, as to a merit raise recommendation, "[i]f it is under investigation and the department head requires it to be tabled, then I go along with what the department head wants."  (Adams Dep., at 17.)

The net result was that when the City Council reached the agenda item for Vigor's merit raise, the Mayor and Council voted to table it.  (Stringfellow Dep., at 29, 31; doc. 51, Exh. 7, at 5; Adams Dep., at 15.)[15]  The uncontroverted record evidence is that this was done at Chief Allen's request, with the City Council acquiescing because they defer to department heads on merit raise issues.  Several days later, Dr. Rubenstein asked Chief Allen why Vigor's merit raise had been tabled, to which Chief Allen responded "that Mr. Vigor had had a conversation with him where he had acted rude, insubordinate and inappropriate and he felt based on that behavior he was not deserving of a raise at that time."  (Rubenstein Dep., at 18-19.)[16]  After the issue was

replied with a one-word response, to-wit: "ok."  (*Id.*)  Plaintiff suggests that Dr. Rubenstein was the author of the e-mail requesting that the merit raise be tabled.  (Doc. 58, at 5.)  However, such a reading is inconsistent with the face of the exhibit and would be nonsensical.  A plain reading of the e-mail establishes that it was Chief Allen, and not Dr. Rubenstein, who made the tabling request and who had discussed the matter with Councilman Hanke.  No other interpretation of that exhibit is reasonably possible.  Thus, contrary to plaintiff's construction, nothing in that e-mail supports plaintiff's sinister inference that two City Council members met privately to discuss Vigor's situation outside of executive session or council meeting.

[15]     Meeting minutes for the December 14 City Council provide no detail concerning the reasons for the tabling of Vigor's merit raise recommendation, but simply state (amidst dozens of other agenda items) in cursory terms that Councilman Adams made the motion to table, that Councilman Harben seconded the motion, and that the motion carried.  (Doc. 51, Exh. 7, at 5.)

[16]     Remarkably, plaintiff's brief asserts that "[t]he Defendants agree that the reason the Plaintiff was not given a merit raise was because he applied for a position with another City's Fire Department."  (Doc. 58, at 5.)  The Court has found nothing in defendants' briefs or the

tabled, the City Council never affirmatively voted one way or the other on whether Vigor would receive a merit raise effective his January 2007 anniversary date. (Allen Dep., at 33.) So Vigor never received such a raise.

To be sure, there is some confusion and inconsistency in the record regarding the precise mechanism and process followed by the City Council in tabling the agenda item. Dr. Rubenstein's testimony was that Chief Allen addressed the Council at the pre-meeting for the December 14 meeting to request that Vigor's merit raise be tabled. (Rubenstein Dep., at 17.) Adams' recollection was that during the meeting itself, when the agenda item was read, a Council member indicated that Chief Allen had said that item needed to be tabled, so the Council voted to table it. (Adams Dep., at 15.) Adams was unable to recall accurately which Council member had made the motion to table the Vigor merit raise issue. (*Id.* at 21.) And although official minutes show that he was not present, Council member Charles Hanke's memory was that there was an executive session during the December 14 meeting, at which time there is a "[p]ossibility" that Chief Allen's request to table Vigor's merit raise was discussed. (Hanke Dep., at 22-23.) After reviewing the meeting minutes, Hanke acknowledged that he was not present at the December 14 meeting and that those minutes reflect that the Council did not go into executive session during the meeting to address Vigor's situation. (*Id.* at 24.)[17]

---

summary judgment record that would support this proposition, and defendants emphatically dispute plaintiff's characterization. Besides, other firefighters applied for jobs at other municipalities and still received merit raises, so plaintiff's proffered explanation rings hollow.

[17]     While plaintiff seizes on these discrepancies, it must be borne in mind that all of this deposition testimony was taken in August 2008, some 20 months after the meeting in question. Moreover, the timing of events from the initial recommendation of a merit raise through the confrontational meeting with Vigor through the City Council meeting at which the recommendation was to be voted on spanned approximately a week. This compressed time frame of critical events appears to account for a great deal of the procedural confusion reflected in the mechanics of the City Council's handling of Vigor's merit raise issue. More importantly, in the absence of any constitutionally protected right, the exact procedure used by the City Council to table this agenda item is of no consequence. As such, for the reasons discussed *infra*, the Court is of the opinion that these inconsistencies identified by plaintiff do not matter for Rule 56 purposes because they do not give rise to genuine issues of material fact.

### D.     Grievance Issues.

Taken in the light most favorable to Vigor, the summary judgment record reflects that he undertook to file a grievance concerning the denial of his merit raise, but that the Personnel Board did not allow him to do so.  At some point, Vigor called a person named Jim Hanson at the Personnel Board to inquire as to whether he could file a grievance pertaining to his merit raise.  (Vigor Dep., at 57.)  According to Vigor, he was told that he could not file a grievance until his merit raise was voted on and received a "yes" or "no" decision from the City Council.  (*Id.*)[18]  This advice was apparently contrary to that of Chief Allen, who opined that he could grieve the issue immediately.  (*Id.* at 58.)

In a Declaration filed with his summary judgment brief, Vigor reinforces his deposition testimony by stating that he "sought to file a grievance with the Mobile County Personnel Board regarding the denial of [his] merit raise," that he "was not able to file a grievance," and that the Personnel Board "would not permit [him] to file a grievance because there had not been a 'yes' or 'no' vote by the City of Saraland Council on [his] merit raise."  (Vigor Decl. (doc. 58-8), at 1.)[19]

---

[18]     Assistant Chief Stringfellow conducted his own inquiry by contacting the Personnel Board to ask the same question as to whether Vigor could file a grievance relating to his non-receipt of a merit raise.  (Stringfellow Dep., at 42.)  He was also told that this personnel action was not grievable with the Personnel Board because the City had taken no definitive action on Vigor's merit raise.  (*Id.* at 42-43.)

[19]     Defendants have filed a Motion to Strike (doc. 62) the Vigor Declaration on the grounds that it "contains hearsay," in that it "refers to a conversation that Mr. Vigor had with an unnamed person with the Mobile County Personnel Board."  (Doc. 62, ¶ 3.)  This argument is perplexing.  Nothing on the face of the Declaration constitutes hearsay or refers to any conversations between Vigor and any unnamed person.  As a general matter, Vigor can testify to his understanding of what the Personnel Board did and why they did it without running afoul of hearsay rules.  The Declaration simply states that Vigor attempted to file a grievance and that he was not permitted to do so because there had been no up-or-down vote by the City Council.  As framed, the hearsay objection to the Declaration is not well taken.  At any rate, such an objection is ineffectual because defendants have placed in the record excerpts from Vigor's deposition transcript wherein he testified concerning a specific conversation he had with a named person from the Personnel Board regarding the very subject matter of his Declaration.  (Vigor Dep., at 57-58.)  Defendants cannot be heard to object to Vigor's Declaration for containing information that defendants themselves previously injected into the summary judgment record via deposition

To rebut plaintiff's evidence that he was not allowed to grieve the denial of his merit raise, defendants submit evidence that they contend shows that this issue was, in fact, grievable. Specifically, defendants point to the Rules and Regulations of the Personnel Board, which were applicable to Vigor's circumstances and which provide that grievance subjects may include "working conditions, any dispute concerning the interpretation or application of rules and regulations governing personnel practices or working conditions, as well as any other personnel matters which are germane to the employee's employment."  (Doc. 61, Exh. 10, at Rule XVI(f)(1).)  Defendants further rely on Vigor's admissions that his disagreement with Chief Allen concerned "working conditions" and "the applications and rules governing [his] employment in this case, the merit raise."  (Vigor Dep., at 59.)   Such arguments and evidence may well be persuasive at trial.  For summary judgment purposes, however, they merely create factual disputes as to whether Vigor could or could not grieve the denial of his merit raise.  At the Rule 56 stage, the Court must take the evidence in the light most favorable to plaintiff; therefore, for purposes of the pending Motion for Summary Judgment, plaintiff's evidence that he attempted to file a grievance but that the Personnel Board would not permit him to do so will be credited, and defendants' countervailing evidence will not.[20]

---

excerpts from Vigor.  Likewise, contrary to defendants' protestation, there is no reason to believe that Vigor lacks personal knowledge of the information set forth in his Declaration. Finally, defendants quibble with the veracity of the Declaration, insisting that "Mr. Vigor never attempted to file a grievance with the Personnel Board."  (Doc. 62, ¶ 4.)  Plaintiff's Declaration says he did.  Of course, the record is taken in the light most favorable to the nonmovant at this stage.  The Court will not strike plaintiff's Declaration merely because defense counsel represents that it is untrue.  For all of these reasons, Defendants' Motion to Strike (doc. 62) is **denied**.

[20]     The same conclusion applies to defendants' submission of the Affidavit of Dr. Howard J. Rubenstein, wherein he opines that "[u]nder my review of the rules, Mr. Vigor could have filed a grievance concerning a department head's wrongful withdrawal of a recommendation for a merit raise increase."  (Doc. 51, Exh. 11, ¶ 4.)  This evidence accentuates the parties' dispute of fact as to whether Vigor could or could not file a grievance over his non-award of a merit raise.  Vigor's evidence is that he could not.  Defendants' evidence is that he could.  Again, defendants' evidence on this point of conflict cannot be credited on summary judgment; therefore, Dr. Rubenstein's Affidavit must yield to plaintiff's contrary evidence. Because Dr. Rubenstein's Affidavit cannot be considered on summary judgment anyway, plaintiff's Motion to Strike (doc. 56) such affidavit is **moot**.

### III.   Summary Judgment Standard.

Summary judgment should be granted only if the record establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### IV.   Analysis.

#### A.   *Requirement of a Constitutional Deprivation.*

As noted *supra*, Vigor's causes of action sound exclusively under 42 U.S.C. §§ 1983 and 1985.  A necessary element of proof for all of these claims is that plaintiff establish that he was deprived a right secured by the Constitution or laws of the United States.  *See, e.g., Schwier v. Cox*, 340 F.3d 1284, 1290 (11th Cir. 2003) ("Section 1983 provides a private right of action whenever an individual has been deprived of any constitutional or statutory federal right under color of state law."); *Almand v. DeKalb County*, 103 F.3d 1510, 1512 (11th Cir. 1997) ("Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights."); *Skinner v. City of Miami, Fla.*, 62 F.3d 344, 348 (11th Cir. 1995) (concluding that although public employee was the victim of a state law tort, he was not entitled to relief under § 1983 because he failed to show a constitutional violation); *Trawinski v.*

-13-

*United Technologies*, 313 F.3d 1295, 1299 (11th Cir. 2002) ("a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment").[21]  It is axiomatic that Vigor cannot prevail on his constitutional claims unless he can make out a showing of a constitutional deprivation.  Simply put, then, the presence or absence of a cognizable deprivation is the linchpin of the summary judgment analysis in this case.

Despite the laundry list of constitutional harms identified in the pleadings, the summary judgment record (viewed in the light most favorable to Vigor) falls far short of establishing any constitutional deprivation.[22]  The Court will address each of these potential theories of violation of Vigor's rights in turn.

### B.     First Amendment.

In the Amended Complaint, Vigor alleges that, in applying for a position at the City of Orange Beach, he "engaged in the exercise of his constitutionally protected rights ..., including his guarantee of free speech."  (Doc. 18, ¶ 16.)  Vigor further alleges that defendants' refusal to grant him a merit raise was "designed and intended to suppress unpopular speech," presumably referring to his job application.  (*Id.*, ¶ 17.)  Elsewhere, the Amended Complaint alleges that

---

[21]     This proposition holds with equal force as to Vigor's § 1983 claims against the City of Saraland predicated on a failure-to-train theory.  *See Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) (without underlying violation of plaintiff's constitutional rights, individual defendant cannot be liable for failure to train and municipality cannot be liable on ground that its policy caused a constitutional violation).

[22]     The Court's task in assessing the viability of the various theories identified in or alluded to by the Amended Complaint has been hampered by the fact that plaintiff's brief fails to address with any specificity the nature of the constitutional deprivations claimed or how the record facts and law give rise to triable issues as to the existence of such deprivations here.  In conducting the requisite summary judgment analysis, this Court will not perform plaintiff's research for him or endeavor to articulate arguments that plaintiff could have raised, but did not.  *See, e.g., Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("[T]he court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her."); *see also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (rejecting notion that there is a "burden upon the district court to distill every potential argument that could be made based upon the materials before it").

defendants' denial of his merit raise was imposed "to retaliate for and to deter him from expressing viewpoints or undertaking actions they deemed unfavorable." (*Id.*, ¶ 29.) Accordingly, as set forth in the pleadings, plaintiff's First Amendment theory is that his speech in applying for a position at the City of Orange Beach was constitutionally protected, and that the denial of his merit raise was undertaken to punish and retaliate against Vigor for having engaged in such speech. Inasmuch as the Amended Complaint constitutes plaintiff's sole exposition in the court file of his belief that his First Amendment rights have been violated, the Court's analysis will of necessity be circumscribed by that explanation.

The Eleventh Circuit has long recognized that "a public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Garcetti v. Ceballos*, 547 U.S. 410, 420, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (citation and internal quotation marks omitted). In that regard, it is "well settled" that "for a government employee's speech to have First Amendment protection, the employee must have (1) spoken as a citizen and (2) addressed matters of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007). To assess whether these prerequisites are present, courts "must determine whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Id.* (citation omitted). Simply put, "[w]hen a public employee speaks as an employee on matters of personal interest and not as a citizen on matters of public concern, the First Amendment is not implicated." *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). In applying this standard, courts examine whether the main thrust of the speech is essentially public or private in nature, whether the speech was communicated to the general public or privately to an individual, and what the speaker's motivation for speaking was. *See Mitchell v. Hillsborough County*, 468 F.3d 1276, 1283 (11th Cir. 2006).

The summary judgment record is devoid of any evidence from which a reasonable fact finder could conclude that Vigor engaged in speech protected by the First Amendment. There are no facts suggesting that Vigor ever spoke as a citizen on matters of public concern. Unquestionably, his speech associated with his filing of job applications at the City of Orange Beach related solely to matters of private concern, motivated exclusively by his own self-

-15-

interest.  Likewise, his statements to Chief Allen that it was none of the latter's business whether Vigor had applied or not were plainly speech made in Vigor's role as an employee (not a citizen) on matters of purely personal interest and concern.  This speech was not protected by the First Amendment, as a matter of black-letter law.  Accordingly, plaintiff's attempt to ground his §§ 1983 and 1985 claims on a First Amendment theory must fail.[23]

### C.      Procedural Due Process.

A fair reading of the Amended Complaint is that Vigor also seeks to advance a Fourteenth Amendment procedural due process claim against defendants.  Although the pleadings do not specifically reference the Fourteenth Amendment and do not utilize the term "procedural due process," the Amended Complaint does allege the denial of Vigor's "liberty rights, due process rights, and property rights."  (Doc. 18, ¶ 28.)  Reading the pleadings liberally, the Court, like defendants, assumes that these generic references to liberty and property rights are sufficient to join a procedural due process cause of action in these proceedings.[24]

The Fourteenth Amendment due process clause prohibits states from depriving persons of life, liberty or property without due process of law.  Thus, "[t]he Due Process Clause entitles an

---

[23]      Faced with defendants' arguments that Vigor's speech relating to his Orange Beach job application is beyond the purview of the First Amendment, as a matter of law, plaintiff offers neither legal authority nor record facts to the contrary.  Instead, the sum total of plaintiff's argument as to why his First Amendment claims should survive summary judgment is as follows: "The argument that there was no free speech in this case is likewise a question of fact."  (Doc. 58, at 6.)  How is it a question of fact?  What record facts could possibly give rise to a protected First Amendment interest in the speech at issue here?  Plaintiff does not say, and a searching examination of the record reveals no satisfactory answers pertaining to the First Amendment facet of plaintiff's claims.

[24]      In doing so, the Court considers a constitutional theory that it is not at all clear plaintiff intends to advance.  Nowhere in plaintiff's opposition brief (doc. 58) does he mention the Fourteenth Amendment or assert that he is pursuing a procedural due process claim.  At best, plaintiff states that "his merit raise represents a tangible benefit to which he was entitled."  (Doc. 58, at 6.)  From that threadbare, conclusory assertion, it can be inferred that plaintiff is arguing that he held a protected property interest in receiving a merit raise in January 2007, such that the City of Saraland's deprivation of that merit raise from him without a hearing or other procedural safeguards ran afoul of the procedural due process guarantees of the Fourteenth Amendment.  This analysis proceeds on the assumption that Vigor's constitutional claims are predicated on this unspoken theory.

-16-

employee who alleges that the reasons given for the deprivation of a property interest are pretextual to receive adequate procedural protection both before and after the deprivation." *Narey v. Dean*, 32 F.3d 1521, 1527 (11th Cir. 1994). "There are two questions in the analysis of a procedural due process claim. Did the plaintiff have a property interest of which he was deprived by state action? If so, did the plaintiff receive sufficient process regarding that deprivation?" *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999). The first inquiry is of critical importance in this case.

In deciding whether Vigor enjoyed a property interest in the merit raise for which he became eligible in January 2007, the Court recognizes that "[p]roperty interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts. ... Whether these sources create a property interest must be decided by reference to state law." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006) (citations omitted); *see also Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003) ("Property interests protected by the Constitution are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.") (citation omitted).

Here, Vigor's procedural due process claim rests entirely on his contention that he was entitled to receive a merit raise in January 2007, such that defendants' denial of same constitutes a deprivation of an employment-related benefit in which he had a constitutionally protected property interest. The fundamental defect in this line of reasoning is that uncontroverted record evidence establishes that merit raises were discretionary for City of Saraland employees. Indeed, the applicable Rules and Regulations plainly state that merit raises "shall not be automatic" but are instead available only upon the "specific recommendation" of the appointing authority, which in this case was the Saraland City Council. (Doc. 51, Exh. 4, at § 5.4.) It was likewise undisputed that the City Council delegated the decision of whether or not to recommend a merit raise for a City employee to the unfettered discretion of the department head, subject to City Council ratification which was always provided. The record in the light most favorable to plaintiff establishes that while Chief Allen typically did recommend merit increases for his employees, he had declined to do so on multiple occasions. There is no indication that Chief Allen's discretion to recommend or withhold merit raises was cabined or constrained in any way by state law, Personnel Board Rules and Regulations, contracts, the City Council, or any other

-17-

source.  As such, the availability of merit raises for City of Saraland employees was unquestionably discretionary on the part of the relevant department head and City Council.[25]

Certainly, there has been no showing of any statute, regulation, ordinance, rule, contract or understanding that would carve out a property interest in a City of Saraland employee receiving his or her merit increase each year.  Moreover, the law is quite clear that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. ... [A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005); *Berheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996) ("where the complained-of conduct concerns matters that are within an official's discretion, entitlement to that benefit arises only when the discretion is so restricted as to virtually assure conferral of the benefit").  Thus, the discretionary nature of the merit raise for Vigor conclusively precludes him from claiming any constitutionally protected property right in receiving such a raise.

Numerous courts have reached the same conclusion upon examining discretionary pay raise schemes analogous to that at issue here.  For example, in *Estes v. Tuscaloosa County, Ala.*, 696 F.2d 898 (11th Cir. 1983), the plaintiff was a Tuscaloosa County Clerk's Office employee

---

[25]    Notwithstanding this avalanche of evidence confirming the discretionary nature of merit increases for City employees, plaintiff argues on summary judgment that they are not discretionary because "merit raises are routinely given to employees, and are not, in fact exposed to discretionary debate."  (Doc. 58, at 6.)  This contention misses the mark.  The fact that merit raises are routinely given does not transform them into non-discretionary entitlements, particularly where Chief Allen had exercised his virtually boundless discretion to deny such raises on multiple occasions previously.  Moreover, Assistant Chief Stringfellow, on whose testimony plaintiff relies heavily in making his "non-discretionary" argument, testified to his understanding that even Fire Department employees with high quality or exceptional service ratings would not necessarily receive merit raises if "there was some other extenuating circumstance."  (Stringfellow Dep., at 18-19.)  So the uncontested evidence is that City Council members, Fire Department officials, and employees understood that merit raises were not a sure thing, even if an employee received a superlative performance evaluation.  Rather, the award of merit raises was left to the extremely broad discretion of the department head, subject to always-furnished Council approval.  On this record, no genuine issue of material fact exists as to whether the right to a merit raise was an entitlement.  All evidence points in the opposite direction.

who sued the county under § 1983 for, *inter alia*, failing to pay her a raise.  The appellate court affirmed the lower court's determination that "[t]here is no indication of any statute, rule, or understanding upon which plaintiff could rely for a legitimate claim of entitlement to a pay raise .... Without such an entitlement, there is no constitutionally protected property interest to serve as the basis of a due process claim."  *Id.* at 901; *see also Leventhal v. Knapek*, 266 F.3d 64, 77 (2nd Cir. 2001) (affirming dismissal of due process claim because state employee lacked property interest in discretionary salary increase, such that employee was not entitled to due process of law before being deprived of such an increase); *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984) (affirming dismissal of public employee's due process claim where trial judge correctly found no Fifth Amendment violation because employee "had no property interest in a merit pay increase"); *Kavanagh v. City of Phoenix*, 87 F. Supp.2d 958, 967 (D. Ariz. 2000) (dismissing municipal employee's due process claim on ground that he lacked a constitutionally protected property interest in future merit pay increases).

The Court understands Vigor's position that the denial of his merit raise was arbitrary and unwarranted given his exemplary job performance during the preceding 12 months.  But shabby treatment alone is not sufficient to establish a viable procedural due process claim. Simply put, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."  *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *see also Engquist v. Oregon Dep't of Agr.*, --- U.S. ----, 128 S.Ct. 2146, 2151, 170 L.Ed.2d 975 (2008) ("the Due Process Clause does not protect a public employee from discharge, even when such discharge was mistaken or unreasonable"); *McNill v. New York City Dep't of Correction*, 950 F. Supp. 564, 573 (S.D.N.Y. 1996) ("the due process clause does not protect trivial aspects of the public employee's relationship with her employer").  Maybe Chief Allen did not have a good reason for refusing to recommend a merit pay increase for Vigor.  Maybe the City Council should have investigated the matter independently, rather than simply tabling the issue indefinitely on Chief Allen's say-so.  Maybe Vigor was not treated fairly.  But none of that matters for purposes of the procedural due process analysis unless plaintiff possessed a property interest in the benefit that he claims was withheld.  As shown by the foregoing, Vigor lacked the requisite property interest in a discretionary merit raise; therefore, he is barred as a matter of law from proceeding to trial against defendants on a

-19-

procedural due process theory.

> **D.      Equal Protection.**

No equal protection claim is apparent on the face of the Amended Complaint.  Nor does plaintiff's summary judgment brief make even passing reference to an equal protection theory. That said, a § 1985(3) cause of action generally is predicated on a conspiracy to violate one's equal protection rights.  *See, e.g.,* 42 U.S.C. § 1985(3) (creating private right of action against persons who conspire "for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"); *Farese v. Scherer*, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) (explaining that "§ 1985(3) protects two types of classes: (1) those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act") (citation and internal quotation marks omitted).  Given that Vigor has asserted a § 1985 claim in this action, and that subsection (3) is the only one that could potentially apply here, part and parcel of that claim is that defendants conspired to deprive him of his right to equal protection.

The problem, of course, is that Vigor has afforded the Court with neither facts nor an articulation of any legal authority that might implicate his constitutional right to equal protection.  Vigor identifies no possible factual or legal basis for asserting that defendants were conspiring to engage in class-based deprivation of constitutional rights.  Nor does he outline his class affiliation or the contours of any class that he claims to have been targeted.  At most, it appears that plaintiff is contending that he was treated differently from other firefighters or other Saraland employees, that he was in some way singled out for the denial of a merit increase via differential treatment.  This would be a "class-of-one" theory of equal protection.  If, indeed, that is how Vigor intends to proceed (and, again, it is impossible to tell for certain, given his failure to include equal protection allegations in his pleadings or to brief the equal protection issue on summary judgment), such a theory fails as a matter of law.  *See Enquist*, 128 S.Ct. at 2156 (concluding "that the class-of-one theory of equal protection has no application in the public employment context").[26]  The equal protection clause is simply not implicated "in the specific

--------------------------------------------------

[26]      As the Supreme Court explained, if the law were otherwise, then "any personnel action in which a wronged employee can conjure up a claim of differential treatment will

circumstances where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id.* at 2155. Accordingly, the Court finds that plaintiff may not rely on an equal protection theory to get to trial on his constitutional claims.

       **E.**     **Substantive Due Process.**

      Lastly, in the interest of completeness, the Court briefly considers any substantive due process claim that plaintiff may be alleging. Again, neither the pleadings nor Vigor's summary judgment memorandum suggest that he is bringing a substantive due process challenge. Any attempt to do so would border on frivolity. After all, "[t]he law is clearly established that government employees have no substantive due process rights regarding their employment." *Autery v. Davis*, 571 F. Supp.2d 1249, 1252 (M.D. Ala. 2008); *see also Silva*, 351 F.3d at 1047 ("Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection.") (citation omitted); *Narey*, 32 F.3d at 1527 ("[A] pretextual adverse job action claim implicates only procedural, not substantive, due process protection."); *Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007) (opining that plaintiffs could not argue substantive due process violations "with straight faces" because the timing of step increases in a civil service system is not a fundamental right, and the due process clause does not assure the frequency of public employees' raises). As such, to the extent that Vigor would predicate his § 1983 claims on the theory that defendants' denial of his merit raise trammeled his fundamental rights, giving rise to a substantive due process violation, such a theory of relief is legally infirm.

**V.**    **Conclusion.**

      Viewing the record in his favor, David Vigor was a prized employee for the City of Saraland Fire Department who was denied a discretionary merit raise after a verbal confrontation

---

suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action - not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments - on the theory that other employees were not treated wrongfully." *Engquist*, 128 S.Ct. at 2156. Such reasoning definitively slams the door on any attempt by Vigor to devise an equal protection claim from the mere allegations that defendants' denial of his merit raise was arbitrary and that he was treated differently than his coworkers.

with his department head concerning Vigor's legal off-duty conduct.  Perhaps he was treated unfairly.  Perhaps defendants acted arbitrarily or unreasonably in withholding the raise.  But not every workplace slight suffered by a public employee is of constitutional dimensions. *See, e.g., Engquist*, 128 S.Ct. at 2156 (recognizing "common-sense realization that government offices could not function if every employment decision became a constitutional matter"); *Bishop*, 426 U.S. at 349 ("The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."); *Estes*, 696 F.2d at 900 ("not all employment related grievances by public employees rise to the level of constitutional claims").  Plaintiff having failed to establish, by record evidence and legal argument, the existence of any constitutional violation actionable under 42 U.S.C. § 1983, much less a conspiracy to violate his equal protection rights under 42 U.S.C. § 1985(3), defendants are entitled to judgment as a matter of law on all of plaintiff's claims.

Accordingly, it is hereby **ordered** as follows:

1. Plaintiff's Motion to Strike Affidavit of Dr. Howard J. Rubenstein (doc. 56) is **moot**;

2. Defendants' Motion to Strike Declaration of David Vigor (doc. 62) is **denied**;

3. Defendants' Motion for Summary Judgment (doc. 48) is **granted**.  Plaintiff's claims are **dismissed with prejudice**; and

4. A separate judgment will enter.

DONE and ORDERED this 11th day of December, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE